THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOE BONDICK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 6132 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| RICOH IMAGING AMERICAS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joe Bondick filed this lawsuit on November 16, 2021 against Defendant Ricoh Imaging Americas Corporation ("Ricoh"). (Dkt. 1). Eight years ago, in 2014, Bondick purchased a K-50 camera manufactured by Ricoh through a third-party retailer. The camera included a one-year warranty and functioned effectively for at least four years. After four years, the camera began to evidence issues with its exposure, which Bondick claims is due to the design choices made by Ricoh in developing and producing the camera. Specifically, Bondick alleges that the aperture failed because Ricoh used less copper in the armature in the copper/alloy component which, had they used a greater percentage of copper, the component would not have deteriorated as early as it did. Bondick is seeking class certification, preliminary and permanent injunctive relief, and damages based on a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, breach of express warranty, breach of implied warranty of merchantability, breach of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, breach of contract, negligent misrepresentation, fraud, and unjust enrichment. (*Id.*). Ricoh filed this

1

motion to dismiss the Complaint on January 31, 2022. (Dkt. 12). For the reasons discussed below, Defendant's Motion to Dismiss [12] is granted.

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Bondick's Complaint (Dkt. 1) and are assumed true for purposes of Defendant's Motion to Dismiss. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Ricoh Imaging Americas Corporation ("Ricoh") is a Delaware corporation with its principal place of business in New Jersey. (Dkt. 1 ¶ 48). Ricoh manufactures, labels, markets, and sells the K-50 camera, a digital single-lens reflex camera ("DSLR") under the Pentax brand. (*Id*. at ¶ 1). Joe Bondick, a citizen of Illinois, purchased a K-50 camera manufactured by Ricoh at a Camera Craft store in Rockford, Illinois, in late 2014, for approximately $700. (*Id*. at ¶¶ 53–55). Bondick alleges aggregate claims of the proposed class in this case exceeding $5,000,000. (*Id*. at ¶ 46).

Bondick alleges the camera's design results in exposure issues, also known as "black picture problems." (*Id*. at ¶ 2). An aperture is the opening in a camera lens through which light enters the camera, impacting the brightness of a photo. (*Id*. at ¶¶ 4–14). Bondick highlights an issue in the design of the armature, a rod functioning within the aperture. (*Id*.). The armature in the K-50 camera is constructed with a high amount of alloy relative to copper. (*Id*. at ¶¶ 11–14). Bondick claims this ratio renders the armature more susceptible to deterioration, as opposed to if more copper were used, which is the costlier and sturdier material. (*Id*.). The armature in the K-

2

50 camera is also designed with a casing of thick plastic that interferes with the functioning of the aperture. (*Id*. at ¶¶ 13–14).

The K-50 camera purchased by Bondick suffered from exposure issues approximately two to three years prior to the filing of this lawsuit, in either late 2018 or late 2019. (*Id*. at ¶¶ 65–66). Bondick noticed these defects at least four years after purchasing the camera. To have Ricoh evaluate Bondick's camera cost a fee of $200. (*Id*. at ¶ 67). Bondick chose not to pay this fee or have his camera evaluated by Ricoh. (*Id*. at ¶ 67). Ricoh, or its representatives, told him the issue with his camera was an isolated incident and may be resolved through resetting the camera or other remedial action. (*Id*. at ¶ 69).

Bondick included reference in the Complaint to a comparable competitor, the Nikon D 700 camera. The Nikon D 700 is designed with an armature composed of more copper, less alloy, and a thinner plastic covering. (*Id*. at ¶¶ 16–17). Bondick claims because of this design, owners of the Nikon D 700 do not experience the black picture problems faced by K-50 owners. As additional support for his claims, Bondick presents a survey indicating 39 of 146 surveyed K-50 owners experienced aperture failures. (*Id*. at ¶¶ 18–22). Over ninety percent of those surveyed experienced aperture failures between 21 and 36 months after purchase. (*Id*.). Bondick alleges had he or other proposed class members "known the truth, they would not have bought the Product or would have paid less for it." (*Id*. at ¶ 43). The K-50 camera costs between $630 and $900 when new, which is a price premium when compared to similar products. (*Id*. at ¶ 44).

Bondick cites comments in online forums by owners of the K-50 camera, in part to support the premise that Bondick is aware of the aperture issues. (*Id*. at ¶¶ 15, 23–30). The comments originated on three YouTube videos with titles such as, "How to fix Pentax K-50 (K-30) aperture," and are mostly complimentary, indicating the instructions on the videos solved the issue for some

customers.[1] (*Id*. at ¶¶ 28–29). However, Bondick asserts this task "requires skills the average user, such as Plaintiff, does not possess." (*Id*. at ¶ 38).

Pentaxforums.com hosts a section entitled "Pentax Aperture Block Failure." (*Id*. at ¶ 24). On that site, Ricoh posted the following statement: "In the US, the standard 1-year Pentax manufacturer's warranty, which is included with the purchase of any new camera or lens, can seem a bit short at times. We've heard countless stories of users having to send their cameras in for service shortly after their warranty periods had expired, and as you may know, repairs can sometimes end up being quite costly!" (*Id*. at ¶ 31). Bondick alleges Ricoh then offered an extended warranty for the K-50, but this offer was not communicated to him or "almost all members of the proposed class" and required fees for shipping and handling. (*Id*. at ¶¶ 33–34). According to one repair service, fixing the aperture in a K-50 camera may cost $150. (*Id*. at ¶ 36).

In the Complaint, Bondick asserts he "intends to, seeks to, and will purchase the [K-50 camera] again when he can do so with the assurance that [the K-50 camera's] capabilities are consistent with a normal functioning camera." (*Id*. at ¶ 80). Bondick also claims he "is unable to rely on the labeling of not only this Product, but other cameras, because he is unsure of whether their cameras will function adequately," and "wants to purchase a DSLR camera because he likes using this type of camera." (*Id*. at ¶¶ 87–88).

Bondick raises numerous claims related to the failed aperture in the K-50 camera designed by Ricoh and purchased from a third-party distributor. First, Bondick alleges a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq*. (*Id*. at ¶¶ 97–104). The next category of claims Bondick brings are for breaches of express warranty, implied warranty of merchantability, and the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301,

---

[1] The K-30 is a similar camera to the K-50, also designed by Ricoh. (Dkt. 1 at ¶ 30).

4

*et seq*. (*Id*. at ¶¶ 109–15). Bondick also alleges breach of contract, negligent misrepresentation, fraud, and unjust enrichment. (*Id*. at ¶¶ 116–29). Finally, Bondick seeks injunctive relief from the Court directing Ricoh to correct the complained of design in the K-50 camera. (*Id*. at ¶¶ 17–18). Plaintiff is seeking class certification for his claims, including an Illinois Class and a Consumer Fraud Multi-State Class.[2] (*Id*. at ¶¶ 89–96). Related to the proposed Multi-State class, Bondick brought a claim for the violation of the Consumer Fraud Acts of the additional states in the Consumer Fraud Multi-State Class. (*Id*. at ¶¶ 105–08). On November 16, 2021, Defendant moved to dismiss the Complaint in its entirety. (Dkt. 12).

## **LEGAL STANDARD**

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief…by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds v. CB Sports*

---

[2] Bondick submitted two proposed classes in the Complaint. The Illinois Class is defined as "All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged." The Consumer Fraud Multi-State Class is defined as "All persons in the States of Texas, Delaware, Montana, Kentucky, Indiana, North Dakota, Rhode Island, Michigan, Virginia, North Carolina, Kansas, Wyoming, and Delaware, who purchased the Product during the statutes of limitations for each cause of action alleged." (Dkt. 1 at ¶¶ 89–96).

*Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

## DISCUSSION

**A. Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")**

The first cause of action is a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). 815 ILCS 505/1, *et seq*. The ICFA protects consumers and prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . ." *Id*. at 505/2.

To support a claim under the ICFA, Bondick must plead: (1) a deceptive act or practice; (2) Ricoh's intent that Bondick rely on the deception; (3) the deception occurred in the course of conduct involving trade and commerce; and (4) actual damage to Bondick (5) proximately caused by the deception. *Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 558 (Ill. App. Ct. 2d Dist. 2003). ICFA claims must meet the heightened pleading requirement of Rule 9(b). *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *see, e.g., Bonilla v. Ancestry.com Operations Inc.*, 2021 WL 5795306, *7 (N.D. Ill. Dec. 7, 2021). Rule 9(b) requires a plaintiff state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997); *see Windy City Metal Fabricators &*

*Supply, Inc. v. CIT Tech. Fin. Svc's, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). In other words, the plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019).

According to Bondick, he interpreted Ricoh's advertising of the K-50 camera as a DSLR camera as "representations that the [K-50 camera] functioned adequately through its normal use-life and did not suffer black picture problems." (Dkt. 1 ¶ 103). Bondick does not present any specific communication from Ricoh pre-purchase beyond its general distribution and holding out of the product. He also never presents any claim for what the "normal use-life" of a DSLR camera is, or any communication from Ricoh regarding the lifespan of the camera. Instead, Bondick relies on the claim that Ricoh was aware of the aperture issues and did not resolve or effectively communicate the defect.

Bondick does not effectively plead facts in the Complaint to sustain a claim under the ICFA. The Complaint does not identify any specific misrepresentation by Ricoh regarding the K-50 camera. Rather, Bondick stipulates he received, as purchased and advertised, a DSLR camera. The camera worked as described for at least four years, three full years past the one-year warranty. (*Id*. at ¶ 66). Bondick does not allege any false statement relied upon in his purchase of the K-50 camera. It is difficult to know exactly what that representation would be based on the way that Bondick has defined the defect. The representation would need to be, for example, that the K-50 is made with components that will not deteriorate over time like other models. Of course, even that representation would need a time limit because Bondick's camera did work overtime – over four years. The representation would therefore need to claim that the components would not deteriorate for five years or more. Bondick would then need to show that Ricoh knew that the components would deteriorate earlier than that timeframe. Then, Bondick would need to allege

that he bought the K-50 because he did not want to deal with repairs for at least five years. Bondick has not come close to making such a claim.

Bondick also argues Ricoh's knowledge of the alleged defect and failure to disclose related information amounts to a material omission. A "market theory" of causation is insufficient to support an omission claim under the ICFA. *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009). "[I]n a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statement and no omissions. In such a situation, a plaintiff cannot prove proximate cause." *Id; see, e.g., Darne v. Ford Motor Co.*, 2017 WL 3836586, *10 (N.D. Ill. Sept. 1, 2017) ("Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose."); *see also O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 719–20 (N.D. Ill. 2020). Ricoh's holding out, accurately, of the K-50 as a DSLR camera, through a third-party retailer, is not a misrepresentation, and contains no material omission. There is no other alleged direct communication. Plaintiff's claim of a violation of the ICFA is dismissed.

### B. Breach of Express Warranty

To state a claim for breach of express warranty, Bondick must allege Ricoh "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *See, e.g., O'Connor*, 477 F. Supp. 3d at 714 (quoting *Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 787 (N.D. Ill. 2019)); *see also Kmak v. Sorin Group Deutschland GmbH*, 2017 WL 8199974, *5 (N.D. Ill. Dec. 12, 2017); *see also Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 739 (N.D. Ill. 2015).

Defendant argues a plaintiff is required to "state the terms of the warranty or attach it to the complaint" when stating a claim for breach of express warranty. *Northern Ins. Co. of N.Y. v. Silverton Marine Corp*, 2010 WL 2574225, *2 (N. D. Ill. June 23, 2010) (citing *Board of Educ. of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 595 (Ill. 1989) ("The plaintiffs have not alleged the terms of any express warranties, nor do they attach any advertising, label or other document which sets forth their terms. To state a claim, the terms of the express warranty must be stated or attached to the complaint . . ., and failure to do so renders the claim invalid.")). However, in *A, C & S*, the Illinois Supreme Court cited to a case referencing the Illinois practice requirements that "a claim founded upon a written instrument must include a copy thereof, or a recitation of the provisions relied upon." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 454 (Ill. 1982). The Illinois Supreme Court based its holding on fact pleading requirements, and while this Court applies state law to resolve substantive questions, it applies federal law to questions of procedure and evidentiary issues. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005); *see, e.g., Bray v. Fresenius Med. Care Aktiengesellschaft Inc.*, 2007 WL 7366260, *9–10 (N.D. Ill. Aug. 30, 2007). As such, this Court applies the Federal Rules of Civil Procedure, which "do not require that critical documents be attached to the complaint." *See, e.g., Arnold v. Janssen Pharmaceutical, Inc.*, 215 F. Supp. 2d 951, 962 (N.D. Ill. 2002).

The parties disagree as to whether the time-limited nature of the warranty prohibits the claim for breach of an express warranty. Both parties agree the relevant warranty is the one-year warranty attached by Ricoh in the Motion to Dismiss. (Dkt. 19; Dkt. 22). Both parties also agree the defects cited by Bondick arose at least four years after the purchase, at least three years after the time-limited warranty expired. (Dkt. 1; Dkt. 22). Time-limited warranties "cover only defects that become apparent during the warranty period." *Evitts v. DaimlerChrysler Motors Corp.*, 834

9

N.E.2d 942, 950 (Ill. App. Ct. 1st Dist. 2005); *see, e.g., Darne v. Ford Motor Co.*, 2015 WL 9259455, *4 (N.D. Ill. Dec. 18, 2015). Without upholding time limitations, a customer such as Bondick could "compel the manufacturer to insure all latent defects for the entire life of the product . . . ." *Evitts*, 834 N.E.2d at 950. Bondick claims in his response the time limitation in the one-year warranty was unconscionable. A contract provision, such as the time limitation in a warranty, "may be unenforceable if it is either procedurally or substantively unconscionable." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011). However, the argument that provisions of the warranty are unenforceable is not raised in or supported by the Complaint. Plaintiff must allege facts that support that the warranty was unconscionable, and he simply has failed to do so. "A plaintiff may not supplement or amend his complaint by presenting new facts or theories in his briefing in opposition to a motion to dismiss." *See, e.g., Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 990 (N.D. Ill. 2010) (dismissing claims for breach of explicit and implied warranties when a complaint failed to raise or support the argument that portions of the warranty were unenforceable) (citing *Bissessur v. Indiana University Bd. Of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009)).

Furthermore, Bondick's alleged violation of the warranty is not a manufacturing defect but rather an issue in the design of the aperture. Even if he raised this concern within the time limitation of the warranty, his concern is not covered by the terms of the warranty.[3] *Voelker v. Prosche Cards N. America, Inc.*, 353 F.3d 516, 527 (7th Cir. 2003); *see Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 635 (Ill. App. Ct. 1st Dist. 2001). Bondick claims the warranty encompassed the exposure issues since Ricoh allegedly offered an "extended warranty" to certain consumers complaining of the issue. (Dkt. 19). However, Bondick provides no details about this

---

[3] "This warranty is limited to repair of defects in material and/or workmanship." (Dkt. 13-1)

extended warranty beyond a post by Ricoh on a forum site for owners stating, "In the US, the standard 1-year Pentax manufacturer's warranty, which is included with the purchase of any new camera or lens, can seem a bit short at times. We've heard countless stories of users having to send their cameras in for service shortly after their warranty periods had expired, and as you may know, repairs can sometimes end up being quite costly!" (Dkt. 1 ¶ 31). Nowhere in this statement is a recognition that the K-50 needed repairs immediately after the one-year warranty expired. This offer to sell an extended warranty fails to support the claim that an extended warranty existed due to the design defect or that the original warranty encompassed the design defect raised in the Complaint. Bondick's claim for breach of express warranty is dismissed.

### C. Breach of Implied Warranty

The parties disagree as to whether lack of privity prohibits Bondick's breach of implied warranty claim. Plaintiff argues the direct-dealing exception to strict privity applies. The argument regarding privity is impertinent since Plaintiff's claim for breach of implied warranty is definitively time-barred. Illinois law dictates a statute of limitations for implied warranty claims that runs four years from the date the product is delivered. 810 ILCS 5/2-725(1); *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 75 (Ill. App. Ct. 1st Dist. 2001) ("[T]he cause of action for breach of an implied warranty accrues when tender of delivery as made."); *see, e.g., Clifton v. I-Flow Corp.*, 2011 WL 5077615, *3 (N.D. Ill. Oct. 26, 2011). Bondick argues the cause of action is not time-barred because Ricoh "made explicit warranties as to future performance by providing a modified extended warranty for the K-50." (Dkt. 19 (internal quotations omitted)). His basis for this claim is an alleged "free" modified extended warranty for the K-50. (Dkt. 1 ¶ 33). Plaintiff concedes this alleged extended warranty "was not communicated to Plaintiff or most proposed class members." (*Id.* ¶ 34). According to the discovery rule, a cause of action accrues when a

11

breach of warranty is discovered "where a warranty explicitly extends to future performance." 810 ILCS 5/2-725(2).

Bondick fails to sufficiently plead any such warranty for future performance. Even if Bondick effectively pled an extended warranty, the discovery rule does not apply to a claim for breach of implied warranty. *See Nelligan v. Tom Chaney Motors, Inc.*, 479 N.E.2d 439, 442 (Ill. App. Ct. 2d Dist. 1985); *see, e.g. Kim v. McNeil-PPC, Inc.*, 2014 WL 4650101, *3 (N.D. Ill. Sept. 12, 2014). "[M]erely because it is reasonable to expect that a warranty of merchantability extends for the life of a product does not mean that such a warranty explicitly extends to future performance." *Moorman Mfg. Co.*, 435 N.E.2d at 454 (internal quotations omitted). Bondick has not sufficiently pled facts to allege an explicit extension of warranty to future performance regarding the K-50. His cause of action for breach of implied warranty is time-barred and dismissed with prejudice.

### D. Magnuson-Moss Warranty Act

The viability of Bondick's Magnuson-Moss Warranty Act ("MMWA") claim depends on the viability of his common law express and implied warranty claims. *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 784–85 (7th Cir. 2011); *see, e.g., O'Connor*, 477 F. Supp. 3d at 717. Since both the implied and express warranty claims are dismissed, the MMWA cause of action is also necessarily dismissed.

### E. Breach of Contract

To sufficiently plead a claim for breach of contract, Bondick must allege the essential elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Robbins v. Dream Big Athletics, LLC*, 2019 WL 4596698, *3 (Ill. App. Ct. 1st Dist. Sept. 20, 2019) (citing

*Gonzalzles v. American Exp. Credit Corp.*, 733 N.E.2d 345, 351 (Ill. App. Ct. 1st Dist. 2000)). Bondick is unclear in the Complaint as to what "contract" he is referring to for the claim of a breach. (Dkt. 1 at ¶¶ 116–119 ("Plaintiff contracted for a camera which functioned adequately through its normal use-life. . . Defendant breached the contract when the camera suffered the issues described herein, and it did not cure the breach.")). If Bondick is referring to the one-year warranty, the claim fails for the same reasons outlined in Section B, where the Court dismissed the breach of express warranty claim.

Bondick attempts to point out the "basic elements of a contract" in his response. (Dkt. 19). He argues, "Through its authorized retailer, Camera Craft, Defendant made an offer to Plaintiff to purchase the Product 'for approximately $700,' which he accepted. . . When the camera suffered the issues described [], and [Defendant] did not cure, Defendant breached the contract." (*Id.* (internal quotations omitted)). The facts outlined by Bondick describe the sale of the K-50, and Bondick does not dispute he in fact received the K-50 camera. Bondick fails again to assert that Ricoh agreed to provide him with a camera that would have no issues beyond the one-year warranty period. Bondick also fails to show how Ricoh breached its duty to cure when Bondick never gave Ricoh an opportunity to cure in that he never sought to have the camera repaired. "It is essential in pleading the existence of a valid contract to allege facts sufficient to indicate the terms of the contract." *Allstate Ins. Co. v. Winnebago County Fair Ass'n, Inc.*, 475 N.E.2d 230, 233 (Ill. App. Ct. 2d Dist. 1985); *see Razor Capital v. Antaal*, 972 N.E.2d 1238, 1246 (Ill. App. Ct. 2d Dist. 2012). Bondick fails to outline an existing contract or a related breach by Ricoh. The claim for breach of contract is dismissed.

### F. Negligent Misrepresentation

Bondick must allege the following essential elements to sustain a claim of negligent misrepresentation: "(1) the defendant had a duty to the plaintiff to communicate accurate information; (2) the defendant made a false statement of material fact to the plaintiff; (3) the defendant negligently failed to ascertain the truth of that statement; (4) the defendant made the statement with the intent to induce the plaintiff to act; (5) the plaintiff acted in reliance on the truth of that statement; and (6) the plaintiff suffered damage due to that reliance." *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 850 (N.D. Ill. 2021) (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334–35 (Ill. 2006)).

Plaintiff fails to identify the alleged misrepresentation at issue in this case. Instead, he generally claims Ricoh held out the K-50 camera as a DSLR camera, which he interpreted as assurances that the camera would function through its normal use-life and not suffer black picture problems. He interpreted Ricoh's sale as a misrepresentation of the "attributes and qualities" of the camera. As discussed in Section A, this is not sufficient for pleading of a specific misrepresentation. Bondick fails to identify any statement made by Ricoh that was demonstrably false and relied upon by Bondick for his purchase in late 2014. Further, Bondick does not plead facts sufficient to establish Ricoh had a duty to Bondick to communicate accurate information. "[T]he Illinois Supreme Court only recognizes a duty to communicate accurate information where necessary 'to avoid negligently conveying false information that results in physical injury to a person or harm to property,' or 'to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions.'" *Forth v. Walgreen Co.*, 2018 WL 1235015, *7 (N.D. Ill. Mar. 9, 2018) (citing *Brogan v. Mitchell Intern., Inc.*, 692 N.E.2d 276, 278 (Ill. 1998)); *see BCBSM*, 512 F. Supp. 3d at 854–55. Bondick

14

failed to plead facts demonstrating a duty on Ricoh's behalf to communicate accurate information. The claim for negligent misrepresentation is dismissed.

### G. Fraud

Bondick's claim of fraud requires pleading facts to establish: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *BCBSM,* 512 F. Supp. 3d at 850 (citing *Forth*, 2018 WL 12350 at *4). When alleging fraud, plaintiff is required to plead with particularity under Rule 9(b). As discussed in Section A, Bondick fails to plead with particularity a specific misrepresentation. The general allegation that Ricoh represented the K-50 camera as a DSLR, and Bondick interpreted that to mean it would "function[] adequately through its normal use-life and . . . not suffer black picture problems" does not satisfy the heightened pleading requirements. Furthermore, Bondick does not sufficiently allege Ricoh's knowledge that any such statement was false. There is no allegation that Ricoh knew about the K-50 camera's exposure issues at the time of Bondick's 2014 purchase.

### H. Unjust Enrichment

A cause of action for unjust enrichment will be dismissed when a contract governs the parties' relationship. The one-year warranty between the parties is an express contract that dictated Bondick's rights and Ricoh's obligations. *See, e.g., Stavropoulos v. Hewlett-Packard Co.*, 2014 WL 2609431, *5–6 (N.D. Ill. June 9, 2014) ("[U]nder Illinois law, '[b]ecause unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'") (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992)). The claim for unjust enrichment

15

is dismissed also because it is based on the same alleged facts as the dismissed ICFA claim. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim."); *see, e.g., Overstreet v. CIT Mortg. Home Loan Trust 2007-1*, 2017 WL 1022079, *7–8 (N.D. Ill. Mar. 16, 2017) ("Because the Court dismisses Plaintiff's ICFA claim . . ., her unjust enrichment claim premised on this same violation falls too.").

### I. Standing to Seek Injunctive Relief

Bondick seeks injunctive relief based on the claim that he is "unable to rely on the labeling of not only [the K-50 camera], but other cameras, because he is unsure of whether their cameras will function adequately." (Dkt. 1 ¶ 87). A plaintiff must demonstrate "that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Bondick does not have standing to seek injunctive relief since he has attested, he *only* "intends to, seeks to, and will purchase the [K-50 camera] again when he can do so with the assurance that the [camera's] representations are consistent with its ability to function." (Dkt. 1 ¶ 86). Bondick does not claim any intention to purchase another K-50 camera in its current condition, and therefore has not asserted any threat of imminent harm. *See, e.g., Mednick v. Precor, Inc.*, 2016 WL 5390955, *8 (N.D. Ill. Sept. 27, 2016) (collecting cases where plaintiffs lacked standing to seek injunctive relief when asserting they were unlikely to purchase a particular product a second time in its current condition).

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss [12] is granted. Plaintiff's Complaint is dismissed in full.[4]

_____
Virginia M. Kendall
United States District Judge

Date: June 13, 2022

---

[4] Plaintiff also brings a claim for the violation of state consumer fraud acts on behalf of the proposed Consumer Fraud Multi-State Class. Since Plaintiff's own state-based consumer fraud act is dismissed, the proposed class has not been certified, and no other claims brought by the individual Plaintiff remain, this claim is also dismissed.